## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 28 2019, 9:21 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Glen E. Koch II
Boren, Oliver & Coffey, LLP
Martinsville, Indiana

ATTORNEY FOR APPELLEES

Davina L. Curry
The Curry Law Firm, LLC
Greenwood, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Matter of the Adoptions of E.M.M., III, E.E.M., E.M.M., E.W.M., and E.R.M. (Minor Children)


E.A.M. and E.M.M., Jr.,

*Appellants-Petitioners,*

v.

E.M., Sr., and M.M.,

*Appellees-Respondents*

February 28, 2019

Court of Appeals Case No.
18A-AD-1942

Appeal from the Morgan Superior Court

The Honorable Peter R. Foley, Judge

Trial Court Cause Nos.
55D01-1703-AD-40, -48, -49, -50, -51

**Crone, Judge.**

## Case Summary

E.A.M. ("Mother") and E.M.M., Jr. ("Father") (collectively "Parents"), appeal the trial court's order granting the adoption petitions filed by E.M., Sr. ("Grandfather"), and M.M. (collectively "Guardians") to adopt E.M.M., III, E.E.M., E.M.M., E.W.M., and E.R.M. (collectively "the Children").[1] Parents sole argument on appeal is that the trial court erred in finding that their consent to the adoption was unnecessary on grounds different than those pled by Guardians. Finding no error, we affirm.

## Facts and Procedural History

The Children were born to Parents between 2004 and 2011. In May 2011, Guardians, who have two children together, filed a petition in Marion Superior Court seeking guardianship of the Children, which the court granted. The guardianship was established because Parents were struggling, were not employed, and did not have a stable residence. Appealed Order at 3. Shortly after the guardianship was established, Father moved to Pennsylvania to look for work. A couple months later, Mother went to Pennsylvania to be with Father and pursue a job opportunity.

In June 2012, Guardians filed a petition for support and medical insurance against the Parents, and the court issued an order requiring Mother to pay support. In August 2012, Mother filed a motion to terminate guardianship in

---

[1] Grandfather is the Children's paternal grandfather.

the child support case, which was dismissed because it had been filed in the wrong court. Mother understood why her motion was dismissed. In October 2016, Mother filed a motion to terminate guardianship in the guardianship case.

[4] On April 24, 2017, Guardians filed their petitions in Morgan Superior Court to adopt the Children. Guardians alleged that Parents' consent to adoption was not necessary based on Parents' abandonment of the Children and/or Parents' unfitness pursuant to Indiana Code Section 31-19-9-8(a)(1) and -8(a)(11). Mother's motion to terminate guardianship was transferred to and consolidated with the adoption action.

[5] The trial court issued findings of fact and conclusions thereon granting Guardians' adoption petitions. The trial court found that Parents' consent to the adoptions was not required because they failed without justifiable cause to communicate significantly with the Children when able to do so for a period exceeding one year pursuant to Section 31-19-9-8(a)(2). *Id*. at 8-10. The trial court acknowledged that the adoption petitions had not mentioned Section 31-19-9-8(a)(2), but it found that "the evidence presented at trial supports a finding under that section of the statute and the evidence was presented at trial without objection." *Id*. at 8. In addition, the findings of fact and conclusions provide in relevant part as follows:

> 14. In October 2004 Father was convicted of crimes []
> perpetrated against his young son. Father was convicted in
> Pennsylvania of Endangering the Welfare of a Child and Simple

Assault Against a Child. Father admitted he threw his young son on a couch and squeezed the child. Father acknowledged that he hurt his son. Father was placed on supervision by the court for a period of 23.5 months. Father completed his probation in September 2006.

15. At some point in 2012[,] a CHINS case or cases were opened up in Marion County, Indiana concerning one or more of the children. From the evidence presented at trial it is not clear as to exactly when the CHINS cases were opened and what the specific allegations were. [M.M.] testified that the CHINS cases were filed due to allegations of inappropriate touching between the girls that was reported to a counselor and then to DCS.

16. The CHINS cases appear to have been opened in approximately 2012 and concluded in 2013. … [I]t does not appear that there were any allegations of improper conduct by [Guardians].

17. The Parents participated in the CHINS proceedings and were provided public defenders. Father alleges that the judge in the CHINS case ordered that he not have any contact with the Minor Children. No party presented any evidence of a written court order prohibiting contact between Father and the Minor Children. It is unclear what was told to Father and the Court does not find that there was a court order prohibiting [him] from having contact with one or more of the Minor Children.

18. Even if the Court were to conclude that a court had ordered that Father not have contact with the Minor Children, the order would have terminated with the conclusion of the CHINS case in 2013. Yet, Father and Mother still did not see the Minor Children and had no appreciable contact with them thereafter.

19.  The Parents allege that [Guardians] prevented them from contacting the Minor Children. The Parents allege that [Guardians] moved multiple times without notifying the Parents, have blocked the Parents on their Facebook accounts, and have returned gifts mailed for the Minor Children.

….

21.  [Grandfather] has maintained the same cell phone number since the guardianship was established.

22.  The Parents were blocked from [Guardians'] Facebook accounts due to vulgar and inappropriate comments or posts.

23.  The Parents sent a box with a "Happy Birthday" card for [E.M.M.] and other items to the Minor Children, otherwise, the Parents sent no cards or gifts after they left Indiana for Pennsylvania. After the adoption petition was filed the Parents did leave a box of gifts outside [Guardians'] residence for the Minor Children.

….

28.  It is clear that the Parents were aware of the Guardianship Proceedings, and as demonstrated by Exhibits # 3, 16, and 17, Mother possessed the means and knowledge of how to draft and file pleadings with the court on her own behalf concerning these matters.

29.  The Minor Children are doing well in school, have a strong bond with [Guardians and Guardians'] children, have strong ties to the community, and by all accounts are well adjusted and happy in the care and custody of [Guardians].

….

32. [Guardians] stepped in and raised the Minor Children with no support or assistance from the Parents. Even if the Court were to give weight to the Parents['] claims that they were "court ordered" to stay away from the children, they failed to take any action for the better part of three (3) years to initiate contact with the children or seek court intervention. Once the CHINS matters were concluded in 2013 or 2014, the Parents did nothing until Mother's motion to terminate the guardianship was filed in October 2016. The Court can only conclude that the Parents['] absence from the lives of the Minor Children was voluntary and that the [Guardians] did not prevent the Parents from having or pursuing meaningful contact with the Minor Children.

33. During the approximately seven (7) years that the Parents were voluntarily absent from their children's lives, the Minor Children formed strong bonds with [Guardians], [Guardians'] children, and their extended families and friends. …. The Minor Children appear to be well-adjusted children.

34. Uprooting the Minor Children from the only home and "parents" they have known for the last seven (7) years would be traumatic and not in the best interests of the children.

….

40. [Guardians] have met their burden of demonstrating by clear and convincing evidence that the Parents have failed to communicate with their children for a period in excess of one (1) year when able to do so. The Parents have failed to provide this Court with any credible evidence that would justify their failure to remain in contact with their children during the seven (7) years from shortly after the establishment of the guardianship until the filing of Mother's motion to terminate the guardianship in

October 2016. The Court acknowledges the testimony that the Court and/or a counselor in the CHINS case ordered that the Parents have no contact with the children; however, the Parents have failed to provide any written order or other evidence to collaborate [sic] their testimony. Even if the time period in which the CHINS matters were pending is subtracted from the analysis, [Guardians] are still able to meet their legal burden. The bottom line is that the Parents always retained the ability to seek relief from the guardianship orders but failed to take any action in that matter until October of 2016. The Parents acquiesced to [Guardians] to raising their children and the legal consequences of failing to have any meaningful contact with their children for approximately seven (7) years.

41. There is no credible evidence to support the Parents['] argument that [Guardians] prevented the Parents from having contact with the Minor Children. The Parents were involved with multiple lawsuits with [Guardians] (guardianship, child support, and CHINS cases) and always retained the ability to contact [Guardians] or seek intervention of a court through those cases. [Grandfather] maintained the same cell phone number during the entirety of the guardianship matter. There is no evidence that [Guardians] secreted their whereabouts or otherwise [took] action specifically to thwart contact from the Parents. The Court cannot conclude that blocking the Parents from Facebook messaging is sufficient defense for the Parents['] failure to have any appreciable contract [sic] with the Minor Children in this case. The Parents were blocked from Facebook contact due to their own inappropriate actions. The Parents presented no credible evidence of any unsuccessful and/or diligent efforts on their part to locate [Guardians]. Again, at all times during the Parents' absence from the Minor Children the Parents were aware of the guardianship case and the Parents possessed the means and ability to seek relief from that court, but chose not to.

42. The Minor Children will benefit from the stable, supportive and nurturing homes of [Guardians] and it is in the best interests of the children for the adoption to be granted.

43. The Court concludes that [Guardians] have fulfilled their burden of demonstrating by clear and convincing evidence that it is in the best interests of the Minor Children that the Parents, and each of them, parental rights be terminated and [Guardians'] petitions for adoption be granted.

*Id.* at 3-10. This appeal ensued.

# Discussion and Decision

[6]    Parents ask us to review the propriety of the trial court's ruling on Guardians' adoption petitions. In such cases,

> the appellant bears the burden of overcoming the presumption that the trial court's decision is correct. We will neither reweigh the evidence or judge the credibility of witnesses; instead, we will consider the evidence most favorable to the trial court's decision, and the reasonable inferences to be drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. We will not disturb the trial court's ruling unless the evidence leads to only one conclusion and the probate court reached an opposite conclusion.

> Where the trial court enters findings of fact and conclusions [thereon] pursuant to Indiana Trial Rule 52(A), we employ our familiar two-tiered standard of review: we must determine whether the evidence supports the findings and whether the findings support the judgment. We will not set aside the findings or the judgment unless they are clearly erroneous. Findings of fact are clearly erroneous if the record is devoid of any evidence or reasonable inferences to support them, while a judgment is

clearly erroneous when it is unsupported by the findings of fact and the conclusions relying on those findings.

*In re Adoption of S.W.*, 979 N.E.2d 633, 639 (Ind. Ct. App. 2012) (citations omitted).

[7]     Parents argue that the trial court erred in concluding that their consent to adoption is not required on grounds different than those pled by Guardians. Indiana Trial Rule 15(B) provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In discussing how unpleaded issues impact litigation, we have previously stated,

> The function of the issues, whether formed by the pleadings, pre-trial orders, or contentions of the parties, is to provide a guide for the parties and the court as they proceed through trial. Either party may demand strict adherence to the issues raised before trial. If the trial court allows introduction of an issue not raised before trial, an objecting party may seek a reasonable continuance in order to prepare to litigate the new issue. However, *where the trial ends without objection to the new issue, the evidence actually presented at trial controls*. Consequently, neither pleadings, pre-trial orders, nor theories proposed by the parties should frustrate the trier of fact from finding the facts that a preponderance of the evidence permits.

> Because fairness compels certain restraints, however, there are limits upon the principle of amending pleadings through implied consent. For example, a party is entitled to some form of notice that an issue that was not pleaded is before the court. *Notice can be overt*, as where the unpleaded issue is expressly raised prior to or sometime during the trial but before the close of the evidence,

*or implied, as where the evidence presented at trial is such that a reasonably competent attorney would have recognized that the unpleaded issue was being litigated.*

*In re V.C.*, 867 N.E.2d 167, 177-78 (Ind. Ct. App. 2007) (citations omitted) (emphases added).

[8] Generally, a parent's consent to adoption of a child under the age of eighteen is required. Ind. Code § 31-19-9-1. However, Section 31-19-9-8(a) provides that consent to adoption is not required from any of the following:

> (1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
>> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>>
>> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * *
>
> (11) A parent if:
>
>> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and

> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

Ind. Code § 31-19-9-8(a). Subsection (b) of this statute provides that "[i]f a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent."

[9] Here, Guardians pled that Parents' consent was not required pursuant to Indiana Code Section 31-19-9-8(a)(1) and -8(a)(11), but the trial court found that their consent was not needed under subsection 8(a)(2). The petitioner is required to prove by clear and convincing evidence that a parent's consent is not required for the adoption. *In re Adoption of T.L.*, 4 N.E.3d 658, 662 (Ind. 2014). "The most protected status in any adoption proceeding is that of the natural parent. Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the adoption statute to preserve that relationship." *In re Adoption of N.W.*, 933 N.E.2d 909, 913 (Ind. Ct. App. 2010) (citation omitted), *adopted by* 941 N.E.2d 1042 (Ind. 2011).

[10] Parents contend that they did not impliedly consent to trying the issue governed by paragraph 8(a)(2), i.e., failure to communicate significantly for a period exceeding one year without justifiable cause when able to do so. Specifically, Parents assert that because the issue of communication was relevant to the issue of abandonment, they should not have been expected to object to communication evidence. They further argue that they were not on notice that they needed to present evidence of justifiable cause, and therefore the trial

court's analysis begs the question of whether Parents did not present evidence of justifiable cause because such evidence does not exist or rather because Guardians only pled that consent was unnecessary due to abandonment and/or unfitness. Guardians assert that the issue was impliedly tried where both Guardians' counsel and Parents' counsel questioned Parents concerning their justification for failing to communicate with the Children for seven years.[2] We agree with Guardians.

[11] Our review of the record reveals that Guardians' counsel directly questioned both Father and Mother as to why they had not seen the Children in seven years. Tr. Vol. at 61, 65-66. Parents' counsel did not object even though the issue of abandonment applies only to the six months immediately preceding the filing of an adoption petition. Also, Guardians' counsel asked Mother why she did not have contact for the three years between when she was in CHINS court in 2013 and when she filed the petition to terminate the guardianship in 2016. *Id*. at 66. Again, there was no objection.

[12] More importantly, Parents' counsel asked Parents and Guardians a variety of questions exploring the reasons for Parents' lack of contact with the Children since 2011 when the guardianship was granted. Parents' counsel specifically

_____

[2] Guardians provide a string of thirty-eight citations to the transcript without providing even one example of the questions counsel asked and how the witnesses responded. Indiana Appellate Rule 46(A)(8)(a) provides, "The argument must contain the contentions of the appellant on the issues presented supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." Although Guardians cited to the transcript, the failure to provide even some of the substance of these citations violates this rule and hindered our review. However, given our preference for deciding issues on their merits, we nevertheless persisted.

asked Father and Mother whether Guardians had denied Parents contact with the Children or told Parents that they could not have contact with the Children. *Id*. at 141, 194. Parents' counsel asked Father why he had stopped calling the Children, whether Grandfather informed Father of new addresses, and whether Grandfather had kept the same phone number since 2011. *Id*. at 141, 144-45. Parents' counsel asked Mother whether she believed that she attempted to maintain contact with the Children since 2011, and she answered, "Yes, I have. I've tried." *Id*. at 198. Parents' counsel asked Mother whether cards she sent to the Children were returned and whether Mother knew the addresses for Guardians after they moved. *Id*. at 192-93. Parents' counsel also asked Mother whether she tried to reach out to Guardians on Facebook. *Id*. at 194.

[13] In response to questioning, Father and Mother testified that the reasons that they had not had contact with the Children included that Guardians would not allow them to have contact with the Children, the judge in the CHINS case told them they could not have contact with the Children, they were told that the Children's counselor said contact was not good for the Children, they did not know Guardians' phone numbers and addresses, and Guardians blocked them from Guardians' Facebook pages. *Id*. at 65-67, 141, 144-45, 192-94, 204.

[14] In addition, Parents' counsel asked Grandfather and M.M. a variety of questions related to the lack of contact between Parents and the Children since 2011. Parents' counsel asked Grandfather and M.M. if they allowed Parents to speak to the Children or ever told Parents not to call and whether they had ever asked Parents to stop coming to Guardians' home. *Id*. at 83-85, 124. Parents'

counsel asked Grandfather and M.M. about any changes in phone numbers and addresses and whether they informed Parents of any such changes. *Id*. at 77-78, 83, 116.

[15] We conclude that the evidence presented at trial is such that a reasonably competent attorney would have recognized that the unpleaded issue–Parents' failure to significantly communicate with the Children without justifiable cause for more than one year–was being litigated. Accordingly, the trial court properly found that Parents' consent to adoption was unnecessary under paragraph (8)(a)(2). There being no other challenges to the Appealed Order, we affirm.

[16] Affirmed.

Vaidik, C.J., and Mathias, J., concur.